IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

UNITED STATES OF AMERICA,

    Plaintiff

    v.                                                Civil Action No.: 13-C-10

WISCONSIN PUBLIC SERVICE
CORPORATION,

    Defendant.

## COMPLAINT

The United States of America ("United States"), by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought against Wisconsin Public Service Corporation ("WPS" or "Defendant") pursuant to Sections 113(b) and 167 of the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. §§ 7413(b) and 7477, for injunctive relief and assessment of civil penalties for violations of the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-92, Title V of the Act, 42 U.S.C. § 7661-7661(f), and the federally approved and enforceable State Implementation Plan ("SIP") adopted by the State of Wisconsin and approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410.

2. Defendant modified, and thereafter operated, a coal-fired electricity generating plant without first obtaining appropriate permits authorizing the modification and subsequent operation of the plant, and without installing and employing the best available control technology ("BACT") to control emissions of sulfur dioxide ("$SO_2$") and nitrogen oxides ("$NO_x$"), as required by the Act and applicable regulations.

3. As a result of Defendant's operation of the unlawfully modified electricity generating plant following such unlawful modification, large amounts of $SO_2$ and $NO_x$ pollution each year have been, and still are being, released into the atmosphere.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to CAA Sections 113(b) and 167, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

5. Venue is proper in this District pursuant to CAA Sections 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), (c), and 1395(a), because violations occurred and are occurring in this District, and Defendant resides in this District.

## NOTICES

6. U.S. EPA issued a Notice and Finding of Violation ("NOV") on November 18, 2009, covering certain units at the Pulliam Generation Station in Brown County, Wisconsin, and the Weston Generation Station in Marathon County, Wisconsin, and provided a copy of this Notice to the State of Wisconsin, as required by Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

7. The 30-day period between issuance of the NOV and commencement of a civil action, required under CAA Section 113, 42 U.S.C. § 7413, has elapsed.

8. The United States is providing notice of the commencement of this action to the State of Wisconsin as required by CAA Section 113(b), 42 U.S.C. § 7413(b).

## THE DEFENDANT

9. Defendant is a Wisconsin Corporation with headquarters in Green Bay, Wisconsin, and owns and operates the Pulliam Generation Station in Brown County, Wisconsin, and the Weston Generation Station in Marathon County, Wisconsin.

10. Defendant is a "person" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e).

## STATUTORY BACKGROUND

11. The Clean Air Act is designed to protect and enhance the quality of the nation's air, so as to promote the public health and welfare and the productive capacity of its population. CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1).

### The National Ambient Air Quality Standards

12. Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of U.S. EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued pursuant to CAA Section 108, 42 U.S.C. § 7408. The primary NAAQS are intended to be adequate to protect public health with an adequate margin of safety, and the secondary NAAQS are intended to be adequate to protect public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

13. Under CAA Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant or where the air quality cannot be classified due to

insufficient data. An area that meets the NAAQS for a particular pollutant is an "attainment" area. An area that does not meet the NAAQS is a "nonattainment" area. An area that cannot be classified due to insufficient data is "unclassifiable".

14. At all times relevant to the violations alleged in this action, the Weston Generation Station was located in an area that had been designated as being in attainment with the NAAQS for $SO_2$ and $NO_x$.

15. Pursuant to 42 U.S.C. § 7410, each State must adopt and submit to U.S. EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS.

The Prevention of Significant Deterioration Requirements

16. Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process. These provisions are referred to collectively as the "PSD program."

17. Section 161 of the Act, 42 U.S.C. § 7471, requires that each applicable SIP contain a PSD program.

18. A state may comply with Section 161 of the Act by having its own PSD regulations approved as part of its SIP by U.S. EPA, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166.

4

19. If a state does not have a PSD program that has been approved by U.S. EPA and incorporated into the SIP, the federal PSD regulations set forth at 40 C.F.R. § 52.21 shall be incorporated by reference into the SIP. 40 C.F.R. § 52.21(a).

20. On August 7, 1980, EPA found that the Wisconsin SIP lacked approvable PSD provisions, and incorporated by reference the provisions of 40 C.F.R. § 52.21(b) through (w) into the Wisconsin SIP at 40 C.F.R. § 52.2581 (1980). 45 Fed Reg. 52,676, 52,741 (Aug. 7, 1980). In 1999, U.S. EPA fully approved Wisconsin's PSD SIP provisions, found at Wis. Admin. Code ch. NR 405.01 through 405.17. 64 Fed. Reg. 28,745 (May 27, 1999). EPA subsequently approved revisions to the Wisconsin PSD program, effective January 16, 2009. 73 Fed. Reg. 76,560 (Dec. 17, 2008).

21. Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an area designated as in "attainment," unless a permit has been issued that comports with the requirements of CAA Section 165 and the facility employs BACT for each pollutant subject to regulation under the Act that is emitted from the facility. Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil-fuel fired steam electric plants of more than two hundred and fifty million British thermal units ("Btus") per hour heat input and that emit, or have the potential to emit, one hundred tons per year or more of any pollutant, to be "major emitting facilities."

22. Section 169(2)(c) of the Act, 42 U.S.C. § 7479(2)(c), defines "construction" as including "modification" (as defined in CAA Section 111(a)). "Modification" is defined in CAA Section 111(a), 42 U.S.C. § 7411(a), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

5

23. Applicable provisions in the PSD regulations in the Wisconsin SIP have at all relevant times prohibited construction of a major modification at a major stationary source located in an area designated as unclassifiable or in attainment without, among other things, obtaining a PSD permit, undergoing a BACT determination, and applying BACT pursuant to such determination for each relevant pollutant. The definitions contained in the PSD regulations have at all relevant times defined "major modification" to include "any physical change in or change in the method of operation of a major stationary source" that would result in a "significant net emissions increase" of a regulated pollutant. These regulations have at all relevant times defined "major stationary source" to include fossil fuel-fired steam electric plants of more than 250 million BTUs per hour heat input. "Significant" means a rate of emissions that would equal or exceed any of the following rates for the following pollutants: $NO_x$, 40 tons per year; $SO_2$, 40 tons per year.

Title V

24. Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act, including PSD and SIP requirements, are collected in one place.

25. A "major source" for purposes of Title V is defined, among other things, as a source with a potential to emit greater than 100 tons per year of any criteria pollutant. 42 U.S.C. § 7661(2).

26. Wisconsin's Title V operating permit program was granted interim approval by EPA effective April 5, 1995. 40 Fed. Reg. 12,128 (Mar. 6, 1995). Wisconsin's Title V

6

operating permit program was subsequently granted full approval by EPA in 2001, and is codified at Wis. Admin. Code Ch. NR 407. 66 Fed. Reg. 62,951 (Dec. 4, 2001).

27. Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and the Wisconsin Title V operating permit program have at all relevant times made it unlawful for any person to operate a major source except in compliance with a permit issued under Title V.

28. Section 503(c) of the Act, 42 U.S.C. § 7661b(c), the Title V regulations at 40 C.F.R. §§ 70.5(a), (c), and (d), and the Wisconsin Title V program, have at all relevant times required the owner or operator of a source to submit an application for a Title V permit that is timely and complete and which, among other things, identifies all applicable requirements (including any requirement to meet BACT pursuant to PSD), certifies compliance with all applicable requirements, and contains a compliance plan for all applicable requirements for which the source is not in compliance.

29. Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the Act, 40 C.F.R. § 70.2, and the Wisconsin Title V operating permit program regulations have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Clean Air Act and the requirements of the applicable SIP, including any applicable PSD requirement to comply with an emission rate that meets BACT.

## ENFORCEMENT PROVISIONS

30. Sections 113(a)(1) and (3) of the Act, 42 U.S.C. §§ 7413(a)(1) and (3), provide that the Administrator may bring a civil action in accordance with CAA Section 113(b) whenever, on the basis of any information available, the Administrator finds that any person has violated, or is in violation of, any other requirement or prohibition of, among other things: (1) the

7

PSD requirements of CAA Section 165(a), 42 U.S.C. § 7475(a); (2) Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or (3) the Wisconsin SIP or any permit issued thereunder.

31. Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes EPA to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per day for each violation occurring on or after January 31, 1997; $32,500 per day for each violation occurring after March 15, 2004; and $37,500 per day for each such violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, against any person whenever such person has violated, or is in violation of, among other things, the requirements or prohibitions described in the preceding paragraph.

32. 40 C.F.R. § 52.23 provides, among other things, that any failure by a person to comply with any provision of 40 C.F.R. Part 52, or with any approved regulatory provision of a SIP, shall render such person in violation of the applicable SIP, and subject to enforcement action pursuant to CAA Section 113, 42 U.S.C. § 7413.

33. Section 167 of the Act, 42 U.S.C. § 7477, authorizes EPA to initiate an action for injunctive relief, as necessary, to prevent the construction, modification, or operation of a major emitting facility that does not conform to PSD requirements.

## **GENERAL ALLEGATIONS**

34. At all times pertinent to this civil action, Defendant has been the owner and/or operator of the Weston Generation Station in Marathon County, Wisconsin. The Weston Station consists of four coal-fired boilers and related equipment: Weston Units 1, 2, 3, and 4.

35. At all times pertinent to this civil action, the Weston Generation Station has been a "major emitting facility" and a "major stationary source," within the meaning of the Act and the Wisconsin SIP for $NO_x$ and $SO_2$.

36. At all times pertinent to this civil action, the Weston Generation Station has been a "major source" within the meaning of Title V of the Act and the Wisconsin Title V program.

## FIRST CLAIM FOR RELIEF

(PSD Violations)

37. Paragraphs 1 – 36 are realleged and incorporated herein by reference.

38. Defendant commenced construction of one or more major modifications, as defined in the Act and Wisconsin SIP, at the Weston Generation Station. Such major modifications included one or more physical changes or changes in the method of operation, including, but not necessarily limited to, replacement of the economizer and secondary superheater at Weston Unit 2 in 1993. Such modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, of one or more of the following pollutants: $NO_x$ and $SO_2$.

39. Defendant did not comply with the PSD requirements in the Act and Wisconsin SIP with respect to the modified Weston Generation Station. Among other things, Defendant failed to obtain a PSD permit for the construction and operation of the modified Weston Generation Station. Defendant did not undergo a BACT determination, and failed to install and operate the best available control technology for control of $NO_x$ and $SO_2$ pursuant to such determination, as required by the Act and the Wisconsin SIP.

9

40. Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a) and the PSD provisions of the Wisconsin SIP at the Weston Generation Station. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

41. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $32,500 for each day of violation occurring on or after March 15, 2004; and $37,500 for each day of violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SECOND CLAIM FOR RELIEF

(Title V Violations)

42. Paragraphs 1 through 41 are realleged and incorporated herein by reference.

43. As set forth above, Defendant modified the Weston Generation Station under the PSD regulations in the Wisconsin SIP. As a result, such modification triggered the requirements to, *inter alia,* undergo a BACT determination, to obtain a PSD permit establishing emissions limitations that meet BACT requirements pursuant to such a determination, and to operate in compliance with such limitations. Defendant failed to satisfy these requirements.

44. Subsequently, Defendant failed to submit a complete application for a Title V operating permit for the Weston Generation Station and identify all applicable requirements, accurately certify compliance with such requirements, and contain a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a determination under PSD). Defendant failed to obtain a proper or adequate Title V operating permit for the Weston Generation Station that contained emission limitations for $NO_x$ and $SO_2$ that met BACT. Defendant thereafter operated the Weston

10

Generation Station without meeting such limitations and without having a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance. Defendant's conduct violated Sections 502(a), 503(c), and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), and the Title V operating permit program regulations. Unless restrained by an order of this Court, these and similar violations will continue.

45. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $32,500 for each day of violation occurring on or after March 15, 2004; and $37,500 for each day of violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations set forth above, the United States requests that this Court:

1. Permanently enjoin Defendant from operating the Weston Generation Station, including the construction of future modifications, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2 Order Defendant to apply for a PSD permit under Part C of Title I of the Clean Air Act, that conforms with the permitting requirements in effect at the time of the permitting action, for each pollutant in violation of the PSD requirements of the Clean Air Act.

3. Order Defendant to remedy its past violations by, among other things, requiring Defendant to install and operate the best available control technology at the units subject to this action, for each pollutant in violation of the PSD requirements of the Clean Air Act;

4. Order Defendant to apply and/or amend applications for a permit that is in conformity with the requirements of the Title V program;

5. Order Defendant to achieve, maintain, and demonstrate compliance with the CAA and applicable requirements established thereunder, including provisions of the Title V permit and Wisconsin SIP requirements described above;

6. Order Defendant to conduct audits of its operations to determine if any additional modifications have occurred that would require it to meet PSD requirements, and report the results of these audits to the United States;

7. Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

8. Assess a civil penalty against Defendant of up to $32,500 per day for each violation of the Clean Air Act and applicable regulations occurring after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009;

9. Award Plaintiff its costs of this action; and,

10. Grant such other relief as the Court deems just and proper.

Dated: January 4, 2013

Respectfully submitted,

 /s/ Ignacia S. Moreno
IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division


 /s/ Jason A. Dunn
JASON A. DUNN
Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-1111
Facsimile: (202) 616-6583
Jason.Dunn@usdoj.gov


/s/ James L. Santelle
JAMES L. SANTELLE
United States Attorney
CHRIS R. LARSEN
Assistant United States Attorney
United States Attorney's Office
517 E. Wisconsin Avenue
Milwaukee, WI 53202
(414) 297-1700


OF COUNSEL: EATON WEILER
Associate Regional Counsel
SABRINA ARGENTIERI
Associate Regional Counsel
United States Environmental
Protection Agency, Region 5
77 W. Jackson Boulevard
Chicago, IL 60604-3590

13